IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| EXECUTIVE RISK INDEMNITY, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 06-00904–CV-W-HFS |
| | ) | |
| ASURION PROTECTION SERVICES, | ) | |
| LLC f/k/a LOCK/LINE, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Defendants Asurion Protection Services, LLC, f/k/a Lock/Line LLC and Asurion Warranty Protection Services of Florida, LLC f/k/a Lock/Line Warranty Services of Florida, LLC, have filed a motion to dismiss the complaint, or, alternatively, to stay the action. Plaintiff, Executive Risk Indemnity Inc., commenced this action seeking a judicial declaration that it does not have a duty to indemnify defendants in an underlying state action.

Executive Risk and Asurion executed an insurance policy in which Executive Risk agreed to pay loss on behalf of Asurion resulting from certain claims made against them during the policy period which encompassed June 1, 2005 through June 1, 2006.[1] Executive Risk accepted the defense of Asurion in the underlying action, but reserved its rights with respect to indemnity.

_____

[1]In the underlying action, Lissabet, et al. v. Lock/Line LLC and Lock/Line Warranty Services of Florida, LLC, the plaintiffs alleged that the defendants provided refurbished telephone equipment worth less than the deductible, resulting in the plaintiffs paying more for the replacement phones than they were worth. The plaintiffs sought recovery of the amounts they paid in excess of the actual cost of the replacement phones as well as the recovery of unfair and unreasonable premium charges.

According to Executive Risk, in September of 2006, a proposed settlement agreement was reached in the underlying <u>Lissabet</u> action. (Suggestions in Opposition: Ex. A, Affidavit of Sheila A. Glackin[2], ¶3). Pursuant to the settlement, Asurion agreed to certification of a global class and sub-class of current and former subscribers meeting certain criteria; to correct disclosures provided to Plan Subscribers; to provide global class members with phone cards with a retail value approximately equal to a one month premium charge payable under the plans; to provide vouchers to sub-class members for replacement mobile phones in amounts up to $100; and to pay plaintiffs' attorneys' fees. (Id, ¶ 4). As final settlement terms were being negotiated, Asurion requested that Executive Risk participate in and contribute to a settlement of the <u>Lissabet</u> action; the request was denied by letter dated October 13, 2006, and shortly thereafter, Executive Risk filed the instant action seeking a declaration regarding indemnification. (Id, ¶ 6). Ms. Glackin states her belief that the <u>Lissabet</u> action has settled. Settlement documentation was submitted to the court for approval. (Id., ¶ 8).

In addition to the <u>Lissabet</u> action, Asurion is also the defendant in an underlying case styled <u>Perez v. Asurion Corp., et al.</u>, No. 06-20734 (S.D. Fla.). (Id., ¶ 9). In a joint motion the plaintiffs in the <u>Perez</u> action sought leave to file a fourth amended complaint for settlement purposes which stated, *inter alia*, that the settlement agreement settled all allegations and claims asserted in the <u>Lissabet</u> and <u>Perez</u> actions, as well as claims asserted by plaintiffs in a case styled <u>Angela Rieke v. Asurion Corporation et al.</u>, Case No. 05-CV-1357-JFS, pending in the United States District Court

---

[2]As stated in her affidavit, Ms. Glackin is employed as a Senior Claims Officer in the Professional Liability Claims Department of Chubb & Son, a division of Federal Insurance Co., which serves as Claims Manager for Executive Risk.

for the Southern District of California. (Suggestions in Opposition: Ex. D, Joint Motion, pg. 4). This statement was later confirmed in the Stipulation of Settlement and Release. (Id: Ex. G, ¶ 1).

Ripeness Doctrine

There is no dispute that the settlement agreement is waiting final court approval. However, Executive Risk claims that it has no obligation to indemnify Asurion for any loss resulting from the settlement of the putative class action lawsuit because at least portions of the settlement do not constitute "Loss" as defined in the Policy. (Amended Complaint: ¶ 2). As stated in the Policy, "Loss" was defined as the total amount which any insured became legally obligated to pay as a result of any claim made against the insured, including damages, judgment, settlements and defense costs. (Id: ¶ 17). However, "Loss" excluded, among other things, matters uninsurable under the law pursuant to which the Policy was construed; the return of fees or other compensation paid to the insured; and

 the cost of correcting, re-performing or completing any insured services.

In response, Asurion contends that since a settlement has not been finalized and approved, the issue of indemnification is not ripe for review. Executive Risk counters that the question of indemnification became subject to adjudication the moment Asurion requested its participation in and contribution to a potential settlement. In support of their respective positions, both parties rely on the well settled holding that the ripeness inquiry requires the examination of both "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Public Water Supply Dist. v. City of Peculiar, 345 F.3d 570, 572-73 (8th Cir. 2003).

Case 4:06-cv-00904-HFS   Document 30   Filed 05/07/07   Page 3 of 7

Whether a case is "fit" depends on whether it would benefit from further factual development. Public Water, at 573. The case is more likely to be ripe if it poses a purely legal question and is not contingent on future possibilities. Id.

In determining the hardship prong, "[a]bstract injury is not enough. It must be alleged that the plaintiff has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged statute or official conduct." Public Water, at 573; quoting, O'Shea v. Littleton, 414 U.S. 488, 494 (1974). "The plaintiffs need not wait until the threatened injury occurs, but the injury must be 'certainly impending.'" Id; quoting, Paraquad, Inc. v. St. Louis Hous. Auth., 259 F.3d 956, 958-59 (8th Cir. 2001).

As to the first prong regarding fitness, Executive Risk contends that the issue of indemnification is fit for judicial review because it presents a purely legal issue. In support of this contention, Executive Risk relies on Capitol Indem. Corp. v. Miles, 978 F.2d 437 (8th Cir. 1992); and Aetna Cas. & Sur. Co. v. General Dynamics Corp., 968 F.2d 707 (8th Cir. 1992). In Miles, after a settlement was reached in an underlying action, the defendant demanded that the plaintiff liability carrier indemnify him for any amount (less the deductible) he was required to pay in contribution. Miles, 978 F.2d at 438. The court found that since the defendant made a demand on the plaintiff and the plaintiff rejected the demand, the lines were drawn, the parties were at odds, and the dispute was real. Id. The court reasoned that the plaintiff was in no different position than that of an insurer who denied that coverage existed under its policy for liabilities of the insured that were contingent or unadjudicated. Id. In such cases, it was common for the insurer to bring an action for a declaratory judgment that it had no duty to indemnify. Id. Similarly, in Aetna Cas. & Sur., the court found that even where suits had not as yet been filed against the insured in the underlying action, nor any

4

settlements reached with respect thereto, the insurer's declaratory judgment action was ripe for adjudication where the insured made a clear demand for payment of defense and indemnity costs.

Conversely, Asurion argues that there are too many uncertainties in the underlying action for a determination about indemnification to be made. In support of this argument Asurion relies on Shapiro Sales Company v. Alcoa, Inc., 2006 WL 2228987 (E.D.Mo. 2006), and Amerisure Mutual Insurance Company v. Paric Corporation, 2005 WL 2708873 (E.D.Mo. 2005). In Alcoa, the plaintiff insurer sought a declaratory judgment that it was not under a duty to defend or indemnify the insured in underlying state court actions. On a somewhat different note in Paric, the defendant insurer moved to dismiss, or, alternatively, to stay an action in which the insured sought a declaratory judgment that the insurer was under a duty to defend and indemnify it in an underlying action.

Although the movant for declaratory judgment in Alcoa was the insured, while in Paric the insurer sought the declaration, in both cases the court ultimately held that the duty to indemnify was not ripe. In reliance on Superior Equip. Co. v. Maryland Cas. Co., 986 S.W.2d 477, 484 (Mo.App. 1998), the Alcoa and Paric courts found that the facts of the underlying actions were too speculative and indeterminate. Alcoa, at *3; Paric, at *8 ("[W]here the controlling facts are unknown and the duty to defend arises out of potential coverage, resolution of the duty to indemnify must await the facts."). For, a finding in the underlying actions that the insured was not liable would make a determination as to the duty to indemnify merely advisory opinions. Id.

The circumstances presented in Alcoa and Paric are distinguishable. For in both cases, complaints were filed in the underlying actions, but the proceedings were on-going. Thus, the issue of liability in either case had not been resolved. However, here, on the other hand, the dispute has been resolved, subject to court approval, and the parties have entered into a settlement agreement.

5

The trouble with the "settlement" argument as grounds for saying that plaintiff does not seek an advisory opinion on a hypothetical situation is that there are a variety of settlement agreements, and the agreement to settle a class action is among the least firmly established, and most subject to slippage. Some settlement agreements to pay money simply involve contract enforcement. Others require judicial examination and evaluation. A class action settlement is typically subject to outside objections, which may complicate judicial evaluation. Judges may totally reject class action settlements or require revisions.

The settlement in question may have aspects that could be readily ruled as a matter of law, one way or the other, and may have aspects that arguably fall within the insurance coverage and others that arguably are excluded.

Without reaching the issue of hardship I conclude that the current situation is sufficiently fluid as to preclude judicial opining on issues that may never require an answer. The Constitutional bar on giving advisory opinions (first announced, as I remember, in response to an inquiry from President Washington) probably precludes going forward in this case.

Because the Florida court appears to be moving promptly on the request to approve a class action settlement, a dismissal seems unnecessary and inappropriate. Rather, a stay may well result in clarification of the issues and a hardening of questions to be resolved.[3]

_____

[3]I recognize that trial court approval may not give finality to the settlement agreement. I am inclined currently, however, to suppose that appellate review is not sufficiently likely to upset the apple-cart so that I could proceed without a long delay for an appeal. There is no bright-light test for guiding the courts as to when to go forward with adjudication. See, e.g., the balancing required in cases like Public Water, 345 F.3d at 572-3.

Case 4:06-cv-00904-HFS   Document 30   Filed 05/07/07   Page 6 of 7

As a matter of discretion, therefore, I DENY the motion to dismiss, without prejudice to further consideration, and STAY these proceedings until counsel can report final action of the Florida trial court on the settlement agreement.

/s/ Howard F. Sachs
HOWARD F. SACHS
UNITED STATES DISTRICT JUDGE

May 7, 2007

Kansas City, Missouri